# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBER SEYBERT, individually and on behalf of all others similarly aggrieved,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CHLN, INC., LANDRY'S, INC., and LANDRY'S PAYROLL, INC.,<br><br>　　　　　　　　　　　　Defendants. | Case No.: 3:20-cv-02529-H-KSC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS THE ACTION**<br><br>[Doc. No. 8.] |

On December 30, 2020, Plaintiff Kimber Seybert ("Plaintiff") filed a class action complaint against Defendants CHLN, Inc. ("Chart House"), Landry's, Inc., and Landry's Payroll, Inc. (collectively, "Defendants"). (Doc. No. 1.) On February 3, 2021, Defendants filed a motion to compel arbitration and dismiss the action, or, in the alternative, to compel arbitration, dismiss Plaintiff's class claims, and stay the action. (Doc. No. 8.) On February 22, 2021, Plaintiff filed a response in opposition Defendants' motion. (Doc. No. 9.) On March 1, 2021, Defendants filed a reply. (Doc. No. 11.) The Court currently has a hearing on Defendants' motion scheduled for March 15, 2021. The Court, pursuant to its discretion

under Local Rule 7.1(d)(1), determines that the motion is fit for resolution without oral argument, vacates the hearing, and submits the motion on the parties' papers. For the following reasons, the Court grants Defendants' motion.

## Background

Chart House is headquartered in Houston, Texas, and owns and operates twenty-one restaurants nationwide. (Doc. No. 8-1, Jasso Decl. ¶ 1.) Landry's, Inc. is the parent company of Chart House and Landry's Payroll, Inc. (Id.) Plaintiff worked as a server in Chart House's restaurant located in Cardiff, California, from 2007 to around 2019 to 2020.[1] (Id.; Doc. No. 9-1, Seybert Decl. ¶ 2.)

In April 2015, Plaintiff was presented with a document entitled "Mutual Agreement to Arbitrate Claims" (the "Arbitration Agreement"). (See Jasso Decl. ¶ 2; Seybert Decl. ¶ 4.) The first sentence of the Arbitration Agreement states:

> In consideration of the at-will employment relationship between the Employer and Employee and the mutual desire of the parties to enter into this Mutual Agreement to Arbitrate Claims ("Agreement"), the parties hereby agree that any and all disputes, claims or controversies between the parties, including but not limited to any dispute arising out of or relating to this Agreement, the employment relationship between the parties, or the formation or termination of the employment relationship, which are not resolved by their mutual agreement shall be resolved by final and binding arbitration by a neutral arbitrator.

(Jasso Decl. Ex. A.) The Arbitration Agreement then goes on to state the following:

> BY SIGNING THIS AGREEMENT, THE PARTIES HEREBY WAIVE THEIR RIGHT TO HAVE ANY DISPUTE, CLAIM OR CONTROVERSY DECIDED BY A JUDGE OR JURY IN A COURT.
>
> . . . I ACKNOWLEDGE THAT BEFORE I SIGNED THIS AGREEMENT I HAVE HAD AN OPPORTUNITY TO ASK QUESTIONS CONCERNING IT. I UNDERSTAND THAT I AM PERMITTED TO TAKE THIS AGREEMENT WITH ME AND REVIEW IT WITH AN ATTORNEY OF MY CHOICE IF I SO DESIRE. I FURTHER UNDERSTAND THAT I

---

[1]   Plaintiff contends that she ended her employment in approximately May 2020. (Seybert Decl. ¶ 2.) According to Defendants, however, Plaintiff last worked a shift in November 2019. (Jasso Decl. ¶ 2.)

MUST SIGN THIS AGREEMENT BEFORE I MAY BEGIN OR CONTINUE MY EMPLOYMENT WITH THE EMPLOYER.

I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS MUTUAL AGREEMENT TO ARBITRATE CLAIMS, THAT I UNDERSTAND ITS TERMS, AND THAT I HAVE ENTERED INTO THIS AGREEMENT VOLUNTARILY, WITHOUT UNDUE PRESSURE AND NOT IN RELIANCE ON ANY PROMISE OR REPRESENTATION BY THE EMPLOYER OR ANY PERSON OTHER THAN THOSE CONTAINED IN THIS AGREEMENT.

(Id.) Additionally, the Arbitration Agreement provides that Chart House "reserves its right to amend or modify this Agreement at any time in its sole and absolute discretion provided that the Employee is provided with written notice." (Id.)

Defendants are unable to locate the specific copy of the Arbitration Agreement that Plaintiff signed. (Id. ¶ 2.) Defendants maintain that Plaintiff nevertheless signed the Arbitration Agreement because every employee was instructed to sign it in 2015 to continue their employment. (Id.) Also, according to Defendants' "Arbitration Agreement Roster," Plaintiff signed the Arbitration Agreement in 2015. (Id. Ex. B.) Finally, in her opposition, Plaintiff admits that she signed the Arbitration Agreement in 2015. (Seybert Decl. ¶ 7.)

In 2018, Chart House updated its arbitration agreement (the "Updated Arbitration Agreement"). (Jasso Decl. ¶ 3.) The Updated Arbitration Agreement, like its predecessor, also provides that the parties agree to arbitrate "any and all disputes . . . between the parties, including but not limited to any dispute arising out of or relating to this Agreement, the employment relationship between the parties, or the formation or termination" of that relationship. (Id. Ex. C.) It also states that it may be accepted by the employee's continued employment with Chart House. (Id.)

To apprise its employees of the update, Chart House instructed managers to post arbitration notices in their restaurants and provide employees with a copy of the Updated Arbitration Agreement. (Id. ¶¶ 3-4.) Additionally, Chart House gave automated notices to employees when they accessed Chart House's scheduling system and when they

clocked-in with Chart House's timekeeping system.  (Id. ¶¶ 3-7.)  In May 2019, Chart House instructed general managers to remind employees of the Updated Arbitration Agreement.  (Id. ¶ 8.)  Chart House also provided another round of automated notices in its scheduling and timekeeping systems at this time.  (Id. ¶¶ 8-10.)  Each notice contained a clause stating that an employee's continued employment constituted his or her approval of the Updated Arbitration Agreement's terms.  (Id. Exs. E, F, H.)

Defendants submitted electronic records that indicate Plaintiff viewed the notice posted on the scheduling system four times in 2018 and another four times in 2019.  (Id. ¶¶ 6, 9 & Exs. G, K.)  Plaintiff also clocked-in a total of twenty-five times while the arbitration notices were posted on the timekeeping system during 2018 and 2019.  (Id. ¶¶ 7, 10 & Exs. H, L.)  Despite this, Plaintiff maintains that she was unaware of the Updated Arbitration Agreement's existence during her employment.  (Seybert Decl. ¶ 2.)

On December 30, 2020, Plaintiff filed a class action complaint against Defendants, alleging various wage and hour claims, as well as claims for intentional interference with prospective economic advantage, conversion, unjust enrichment, and unlawful business practices.  (Doc. No. 1.)  With the instant motion, Defendants ask the Court to compel Plaintiff to arbitrate her claims on an individual basis and dismiss the case.  (Doc. No. 8.)

## Discussion

### I. Whether Defendants Can Compel Arbitration

#### A. Legal Standards

The Federal Arbitration Act ("FAA")[2] permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration

---

[2] The parties do not contest whether the FAA applies to this case.  The FAA governs arbitration agreements in contracts involving transactions in interstate commerce.  9 U.S.C. § 2.  The agreements in this case involve interstate commerce because they are employment-related, and Defendants operate a multi-state business.  See E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 289 (2002) ("Employment contracts, except for those covering workers engaged in transportation, are covered by the FAA."); Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 281-82 (1995) (explaining arbitration agreement involved interstate commerce because defendant had a multi-state business and used materials from out of state).  Thus, the FAA applies.

[to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. The FAA reflects an "emphatic federal policy in favor of arbitral dispute resolution." KPMG LLP v. Cocchi, 565 U.S. 18, 21 (2011). Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. Id.

A party moving to compel arbitration carries the burden to show "(1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." Ashbey v. Archstone Prop. Mgmt., Inc., 785 F.3d 1320, 1323 (9th Cir. 2015) (citation omitted). "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1259 (9th Cir. 2017) (quoting Tompkins v. 23andMe, Inc., 840 F.3d 1016, 1022 (9th Cir. 2016)). "While the Court may not review the merits of the underlying case in deciding a motion to compel arbitration, it may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party." Macias v. Excel Bldg. Servs. LLC, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011) (internal quotations, citations, and brackets omitted)).

**B.     Whether the Parties Agreed to Arbitrate**

Fundamentally, "arbitration is a matter of contract." Rent-A-Center, West, Inc., v. Jackson, 561 U.S. 63, 67 (2010). Courts apply state contract law to determine whether a valid arbitration agreement exists, "while giving due regard to the federal policy in favor of arbitration." Goldman, Sachs & Co. v. City of Reno, 747 F.3d 733, 742 (9th Cir. 2014) (international quotation marks and citations omitted); see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Under California law, which applies here, the movant bears the burden to show the existence a valid agreement to arbitrate by a preponderance of the evidence. Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014) (citing Rosenthal v. Great W. Fin. Sec. Corp., 926 P.2d 1061 (Cal. 1996)).

//

### 1. The Arbitration Agreement

#### i. Plaintiff's Assent to the Arbitration Agreement

Plaintiff argues that Defendants fail to demonstrate the existence of a valid arbitration agreement because they did not produce a copy of the Arbitration Agreement signed by her, and, according to Plaintiff, the Arbitration Agreement requires her signature to be valid. (Doc. No. 9 at 9-10.) In support, Plaintiff relies on Gonzalez v. Preferred Freezer Services, LBF, LLC, CV 12-3467 ODW FMO, 2012 WL 2602653 (C.D. Cal. July 5, 2012). In Gonzalez, an employee signed an employee handbook with a dispute resolution policy that stated the following: "[a]t the same time that you receive a copy of this Employee Handbook, you will also be given an Arbitration Agreement, which you will be asked to sign and return to your department manager." Id. at *1. The Gonzalez court interpreted this language as requiring the employee's separate signature for the arbitration agreement to be valid. Id. The employee claimed that he did not sign a separate arbitration agreement, and, in moving to compel arbitration, the employer did not produce a signed copy. Id. The employer merely posited that the employee "surely signed it" because the employer "require[d] every employee to sign . . . as a condition of employment." Id. (internal quotation marks omitted). The court held that this did not demonstrate the existence of an agreement to arbitrate. Id. at *1-2.

But Gonzalez does not apply in this instance. Unlike the employee in Gonzalez, Plaintiff admits that she received the Arbitration Agreement in 2015, discussed its terms with her managers, and signed it. (Seybert Decl. ¶¶ 4-7.) Defendants' business records corroborate Plaintiff's admission. (See Jasso Decl. ¶ 2 & Ex. B.) Accordingly, Defendants have met their burden to show that Plaintiff assented to the Arbitration Agreement by a preponderance of the evidence. See Knutson, 771 F.3d at 565.

#### ii. Economic Duress

Plaintiff then argues that her assent to the Arbitration Agreement's terms should be excused under the doctrine of economic duress. (Doc. No. 9 at 11.) In California, "[e]conomic duress can excuse an innocent party's contractual obligations when the other

contracting party does 'a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure.'" Hicks v. PGA Tour, Inc., 897 F.3d 1109, 1119 (9th Cir. 2018) (Rich & Whillock, Inc. v. Ashton Dev., Inc., 204 Cal.Rptr. 86, 89 (Ct. App. 1984)); see also Itkoff v. ABC Phones of N. Carolina, Inc., 8:17-CV-02043-JLS-JDE, 2018 WL 6242158, at *6 (C.D. Cal. Oct. 11, 2018) (applying this standard in the context of an arbitration agreement between an employer and employee). Plaintiff bears the burden to prove duress by a preponderance of the evidence. In re Marriage of Balcof, 47 Cal. Rptr. 3d 183, 192-93 (Ct. App. 2006).

Plaintiff fails to demonstrate several elements of her economic duress defense. Plaintiff contends that she was "forced to sign the Arbitration Agreement" to keep her job. (Doc. No. 9 at 11.) But, under California law, "the compulsory nature of a predispute arbitration agreement does not render the agreement unenforceable on grounds of coercion or for lack of voluntariness." Lagatree v. Luce, Forward, Hamilton & Scripps, 88 Cal. Rptr. 2d at 682 (Ct. App. 1999); Dotson v. Amgen, Inc., 104 Cal. Rptr. 3d 341, 347 (Ct. App. 2010) (same). Additionally, Plaintiff fails to show that she had "no reasonable alternative" but to sign the Arbitration Agreement. In other words, that she could not have obtained employment as a server elsewhere. Accordingly, Plaintiff fails to satisfy her burden to show that her assent to the Arbitration Agreement in 2015 should be excused.

### 2. The Updated Arbitration Agreement

The Court then turns to whether Plaintiff impliedly assented to the Updated Arbitration Agreement by continuing to work for Chart House. "California law in this area is settled: when an employee continues his or her employment after notification that an agreement to arbitration is a condition of continued employment, that employee has impliedly consented to the arbitration agreement." Diaz v. Sohnen Enterprises, 245 Cal. Rptr. 3d 827, 830 (Ct. App. 2019); see also Harris v. TAP Worldwide, LLC, 203 Cal. Rptr. 3d 522, 530 (Ct. App. 2016) ("[A]n agreement to arbitrate may be express or implied so long as it is written.").

Here, the parties dispute whether Defendants notified Plaintiff about the Updated Arbitration Agreement in the first place. Chart House managers were instructed to provide employees with a copy of the Updated Arbitration Agreement in 2018 and post arbitration notices in each Chart House restaurant. (Jasso Decl. ¶ 3 & Ex. D.). Defendants also submitted records indicating that Plaintiff likely viewed electronic arbitration notices in Chart House's scheduling and timekeeping systems around thirty times during 2018 and 2019. (Id. ¶¶ 5-10 & Exs. G, I, K, L.) Each of these notices provided that an employee's continued employment constituted acceptance. (Id. Exs. E, F, H.) Nevertheless, Plaintiff submits that she does not recall her manager presenting the Updated Arbitration Agreement to her, nor does she recall viewing any of the arbitration notices posted by Defendants during her employment. (Seybert Decl. ¶¶ 8-11.)

The Court need not resolve this dispute at this time because Plaintiff admits she agreed to the Arbitration Agreement, and the changes made by the Updated Arbitration Agreement are not material to the instant motion. After all, for the following reasons, both agreements require the arbitration of each of Plaintiff's claims made against Defendants and are enforceable.

C.  **The Scope of the Agreements to Arbitrate**

The Court next determines "whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1259 (9th Cir. 2017) (quoting Tompkins v. 23andMe, Inc., 840 F.3d 1016, 1022 (9th Cir. 2016)). Here, both the Arbitration Agreement and the Updated Arbitration Agreement apply to "any and all disputes, claims or controversies between the parties, including but not limited to any dispute arising out of or relating to this Agreement, the employment relationship between the parties, or the formation or termination of the employment relationship." (Jasso Decl. Exs. A, C.) Additionally, each agreement expressly covers claims made against Chart House's "officers, directors, employees, owners, shareholders,

members, agents, representatives, benefit plans, sponsors, fiduciaries, agents, parents, subsidiaries, or affiliated entities." (Id.) Accordingly, because each of Plaintiff's claims relate to her employment relationship with Chart House, (Doc. No. 1 ¶¶ 18-47), and both Landry's, Inc. and Landry's Payroll, Inc. are, at a minimum, affiliate entities of Chart House, (Jasso Decl. ¶¶ 1-2), the Arbitration Agreement and Updated Arbitration Agreement each cover the dispute at issue.

### D. Unconscionability

Plaintiff argues that the Arbitration Agreement and Updated Arbitration Agreement are both unconscionable. (Doc. No. 9 at 14.) In California, a court may refuse to enforce a contract that "was unconscionable at the time it was made." Cal. Civ. Code § 1670.5. "[U]nconscionability has both a procedural and a substantive element . . . ." Armendariz v. Found. Health Psychcare Servs., Inc., 6 P.3d 669, 690 (Cal. 2000) (internal quotation marks omitted) (citation omitted). Both must be present for a court to refuse to enforce a contract. Id. In assessing unconscionability, courts use a sliding scale whereby "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id. The party asserting unconscionability carries the burden of proof. OTO, L.L.C. v. Kho, 447 P.3d 680, 726 (Cal. 2019), cert. denied sub nom. OTO, L.L.C. v. Ken Kho, 141 S. Ct. 85 (2020).

Substantive unconscionability deals with the one-sidedness of the terms in an agreement. Armendariz, 6 P.3d at 689-90.

> A contractual provision is not substantively unconscionable simply because it provides one side a greater benefit. The party with the greater bargaining power is permitted to require contractual provisions that provide it with additional protections if there is a legitimate commercial need for those protections, but the stronger party may not require additional protections merely to maximize its advantage over the weaker party.

Epstein v. Vision Serv. Plan, 270 Cal. Rptr. 3d 239, 253-54 (Ct. App. 2020), review denied (Jan. 27, 2021) (citations and internal quotation marks omitted). Here, Plaintiff points to

two provisions in the arbitration agreements that she claims are substantively unconscionable. (Doc. No. 9 at 17-18.)

### 1. Discovery Provisions

Plaintiff first contends that the discovery provisions in both the Arbitration Agreement and Updated Arbitration Agreement are unfair because they give the arbitrator discretion to allow discovery as he or she considers necessary. (Id.) Specifically, each agreement provides that "[t]he arbitrator shall have the authority to order such discovery by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." (Jasso Decl. Exs. A, C.) Plaintiff argues that this would unduly limit her ability to fairly litigate her claims. (Doc. No. 9 at 17.)

This argument is not persuasive. Parties to an arbitration agreement are free to agree to terms limiting discovery so long as the parties are "at least entitled to discovery sufficient to adequately arbitrate their . . . claim[s]." Armendariz, 6 P.3d at 684 (Cal. 2000). In fact, several courts have rejected analogous substantive unconscionability arguments in the context of identical provisions delegating discovery discretion to arbitrators. See, e.g., Roman v. Super. Ct., 92 Cal. Rptr. 3d 153, 165-66 (Ct. App. 2009) (finding identical clause providing arbitrator discretion to order discovery not substantively unconscionable); Lane v. Francis Capital Mgt. LLC, 168 Cal. Rptr. 3d 800, 813 (Ct. App. 2014) (same); see also Yeomans v. World Fin. Group Ins. Agency, Inc., 19-CV-00792-EMC, 2020 WL 5500453, at *13 (N.D. Cal. Sept. 11, 2020) (finding provision only allowing "for discovery at the arbitrator's discretion" as not substantively unconscionable), appeal filed (9th Cir. Oct. 6, 2020); Denton v. WorleyParsons Group, Inc., CV 14-9573 PSG (MRWx), 2015 WL 12746222, at *5 (C.D. Cal. Mar. 17, 2015) (enforcing provision allowing for discovery "where the arbitrator so orders, as necessary for a full and fair exploration of the issues in dispute consistent with the expedited nature of arbitration"); Dotson, 104 Cal. Rptr. 3d at 349 (holding enforceable an arbitration agreement that allowed each side to depose only one natural person in addition to expert witnesses except upon a showing of "need").

Accordingly, Plaintiff fails to demonstrate that the discovery provisions in the Arbitration Agreement and the Updated Arbitration Agreement are substantively unconscionable.

### 2. Appealability Provisions

Plaintiff also argues that the appealability provisions in the arbitration agreements are substantively unconscionable. (Doc. No. 9 at 17-18.) Both agreements provide that "the arbitrator's decision is final and binding." (Jasso Decl. Exs. A, C.) They then define "final and binding" to mean that "there will be no . . . ability to appeal the arbitrator's decision" unless provided by some other law. (Id.) Plaintiff admits that these provisions do not preclude certain forms of judicial review under California law. (Id.) Instead, Plaintiff argues that the way the agreements defined "final and binding" is one-sided because a layperson would likely read the clauses to forbid judicial review altogether. (Id.)

The Court disagrees. It is "well understood" that arbitration awards are only subject to limited judicial review. Vandenberg v. Super. Ct., 982 P.2d 229, 238-39 (Cal. 1999). As the California Court of Appeal has explained, "where parties have agreed their dispute will be resolved by binding arbitration, judicial intervention is limited to reviewing the award to see if statutory grounds for vacating or correcting the award exist." Corona v. Amherst Partners, 132 Cal. Rptr. 2d 250, 253-54 (Ct. App. 2003); Emerald Aero, LLC v. Kaplan, 215 Cal. Rptr. 3d 5, 21 (Ct. App. 2017), as modified on denial of reh'g (Mar. 21, 2017) (citations omitted) ("[California law] provides for limited judicial review of arbitration awards through the statutory confirmation/vacation procedures, and for the right to appeal the ensuing judgment."). The clauses Plaintiff complains of clearly restate this definition in a layperson's terms: the parties cannot appeal the award unless otherwise provided by the law. Further, Defendants have good reason to word these appealability provisions in this manner. The clauses reaffirm the general rule that the arbitrator's decision is insulated from judicial intervention and make the agreements flexible to potential legislative changes to the available grounds for review. Accordingly, Plaintiff has not carried her burden to demonstrate that any terms in the Arbitration Agreement or the Updated Arbitration Agreement are substantively unconscionable. The Court therefore

need not consider procedural unconscionability. <u>Armendariz</u>, 6 P.3d at 690 (requiring both procedural and substantive unconscionability to render agreement unenforceable).  In summary, since a valid and enforceable arbitration agreement exists and covers each of Plaintiff's claims against Defendants, the Court compels Plaintiff to submit her claims to arbitration.

**II.    Plaintiff's Class Claims**

The Court then turns to whether Plaintiff's claims should be arbitrated on an individual basis.  Plaintiff brings each of her claims against Defendants on behalf of a putative class. (Doc. No. 1 ¶¶ 58-159.)  But both the Arbitration Agreement and Updated Arbitration Agreement contain the following class waivers:

> THE EMPLOYER AND EMPLOYEE AGREE THAT EACH MAY BRING AND PURSUE CLAIMS AGAINST THE OTHER ONLY IN THEIR INDIVIDUAL CAPACITIES, AND MAY NOT BRING, PURSUE OR ACT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR COLLECTIVE PROCEEDING.
>
> THE PARTIES FURTHER AGREE THAT NEITHER PARTY MAY BRING, PURSUE, OR ACT AS A PLAINTIFF OR REPRESENTATIVE IN ANY PURPORTED REPRESENTATIVE PROCEEDING OR ACTION, OR OTHERWISE PARTICIPATE IN ANY SUCH REPRESENTATIVE PROCEEDING OR ACTION OTHER THAN ON AN INDIVIDUAL BASIS EXCEPT TO THE EXTENT THIS PROVISION IS UNENFORCEABLE AS A MATTER OF LAW.

(Jasso Decl. Exs. A, C.)   The U.S. Supreme Court held in <u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. 333, 344, 352 (2011), that express agreements mandating parties arbitrate their claims on an individual basis are enforceable.  See also <u>Iskanian v. CLS Transportation Los Angeles, LLC</u>, 327 P.3d 129, 137 (Cal. 2014).  As such, Plaintiff must submit her claims against Defendants on an individual basis.

**III.   Whether to Dismiss or Stay the Action**

According to the Ninth Circuit, "a district court may either stay the action or dismiss it outright when . . . the court determines that all of the claims raised in the action are subject to arbitration." <u>Johnmohammadi v. Bloomingdale's, Inc.</u>, 755 F.3d 1072, 1073-74

(9th Cir. 2014) (citing Sparling v. Hoffman Constr. Co., 864 F.2d 635, 638 (9th Cir.1988)); see also Thinket Ink Info. Res. v. Sun Microsystems, Inc., 368 F.3d 1053, 1060 (9th Cir. 2004) (affirming dismissal under Rule 12(b)(6) when all claims were subject to arbitration). Each one of Plaintiff's claims are subject to arbitration. Therefore, the Court, in its discretion, dismisses the action because no claims remain to be litigated in this Court.[3]

## Conclusion

For the foregoing reasons, the Court grants Defendants' motion to compel arbitration and dismiss the action. The Court orders Plaintiff to submit her claims to arbitration on an individual basis and dismisses this action without prejudice.

**IT IS SO ORDERED.**

DATED: March 11, 2021

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

[3] The parties are free to move to re-open the case to confirm or enforce the arbitration award.